**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: October 12, 2021
Date Decided: November 8, 2021

Garrett B. Moritz, Esquire
Elizabeth M. Taylor, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Kevin M. Gallagher, Esquire
Angela Lam, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

RE:  *Roma Landmark Theaters, LLC et al. v. Cohen Exhibition Company LLC*,
C.A. No. 2019-0585-PAF

Dear Counsel:

This letter resolves the motion of Plaintiffs Roma Landmark Theaters, LLC

and MMC Entertainment LLC ("Plaintiffs" or "Sellers") for an award of attorneys'

fees and expenses for their successful efforts to confirm a post-transaction closing

price adjustment award.  Defendant Cohen Exhibition Company LLC ("Defendant"

or "Buyer") does not dispute that Plaintiffs are entitled to their reasonable fees and

expenses, but it challenges the reasonableness of the amount requested.[1]

---

[1] Plaintiffs' motion is cited as "Pls.' Mot."; Defendant's opposition is cited as "Opp."; and
Plaintiffs' reply is cited as "Pls.' Reply."

I.   **BACKGROUND**[2]

On December 3, 2018, Sellers and Buyer executed a Securities Purchase Agreement ("Purchase Agreement") governing Buyer's acquisition of Landmark Acquisition Corporation from Sellers.  Dkt. 81, Ex. 1.  After closing, a purchase price adjustment dispute arose, which the parties submitted to an independent accounting firm for resolution in accordance with Section 1.3 of the Purchase Agreement.  That provision also provides, in pertinent part:

> The costs of any dispute resolution pursuant to this Section 1.3, including the fees and expenses of the Independent Accounting Firm and of any enforcement of the determination thereof, shall be borne, on the one hand by the Sellers and, on the other hand, by the Buyer, in inverse proportion as they may prevail on the matters resolved by the Independent Accounting Firm, which proportionate allocation shall be calculated on an aggregate basis based on the relative dollar values of the amounts in dispute and shall be determined by the Independent Accounting Firm at the time the determination of such firm is rendered on the merits of the matters submitted.

The accounting firm issued a "Determination Letter" on June 28, 2019, which resolved each of the items in dispute.  Dkt. 81, Ex. 6.  As reflected in the

---

[2] Background on the transaction and the dispute giving rise to the fee application at issue here can be found in the two earlier decisions of the court in this matter.  *Roma Landmark Theaters, LLC v. Cohen Exhibition Company LLC,* 2020 WL 5816759 (Del. Ch. Sept. 30, 2020), and *Roma Landmark Theaters, LLC. v. Cohen Exhibition Company LLC*, 2021 WL 2182828 (Del. Ch. May 28, 2021).  This letter opinion includes only those facts deemed necessary to determine the fee application.

Determination Letter, Sellers prevailed on 91.3% of the disputed items presented for resolution. *See id.* at 15 (determining that Buyer was responsible for 91.3% of the accounting firm's fees pursuant to Section 1.3(e)).

On July 29, 2019, Plaintiffs filed this action to enforce the Determination Letter. Dkt. 1. Defendant filed an answer and counterclaims, seeking damages and vacatur of the Determination Letter pursuant to the Delaware Uniform Arbitration Act (the "DUAA"). Dkt. 10. Plaintiffs moved for summary judgment to confirm the Determination Letter and to dismiss the counterclaims. Dkt. 12. After Plaintiffs filed their combined opening brief in support of their motion to dismiss the counterclaims and for summary judgment, Defendant filed an amended answer and counterclaims. Dkt. 24. The amended answer and counterclaims abandoned Defendant's claim for vacatur under the DUAA and asserted an affirmative defense for vacatur under the Federal Arbitration Act (the "FAA") on the grounds that the Determination Letter had been "procured by corruption, fraud, or undue means." Dkt. 24 at 21.

On the same day, Defendant filed an answering brief in opposition to Plaintiffs' motion for summary judgment, in which Defendant argued that it had adequately "alleged" a claim for fraud in its amended counterclaims, and for that reason, it had "adequately pleaded a basis for vacating the [Determination Letter]."

Dkt. 25 at 38–39.  Relying on its allegations in its counterclaims, Defendant asserted that "[f]or the reasons stated above, Defendant has amply pleaded both fraud as well as 'undue means' justifying vacatur of the PwC award . . . ." *Id.*

Plaintiff filed a new motion to dismiss the amended counterclaims.  Dkt. 34. Following briefing and argument, the court issued a memorandum opinion granting in part and denying in part Plaintiffs' motion to dismiss the counterclaims and denying the motion for summary judgment to confirm the Determination Letter without prejudice.  *See Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759 (Del. Ch. Sept. 30, 2020).

On November 20, 2020, Plaintiffs filed a renewed motion for summary judgment to confirm the Determination Letter.  Dkt. 7–8.  Following briefing and argument, the court granted Plaintiffs' motion.  *See Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2021 WL 2182828 (Del. Ch. May 28, 2021).

Pursuant to Court of Chancery Rule 88, Plaintiffs have submitted a motion for an award of $839,255.59 in attorneys' fees and expenses.[3]  Those fees and expenses

---

[3] Dkt. 104.  Court of Chancery Rule 88 provides, in pertinent part: "In every case in which an application to the Court is made for a fee or for reimbursement for expenses or services the Court shall require the applicant to make an affidavit or submit a letter . . . itemizing (1) the amount which has been received or will be received, for that purpose from any source, and (2) the expenses incurred and services rendered, before making such an allowance."  Ct. Ch. R. 88.

represent 91.3% of the fees and expenses billed by Plaintiffs' counsel—Gibson Dunn & Crutcher LLP ("Gibson Dunn") and Ross Aronstam & Moritz LLP ("Ross Aronstam")—between July 2019 and April 2021 in pressing their affirmative claims for enforcement of the award and seeking dismissal of Defendant's counterclaims.[4] Plaintiffs derive their 91.3% figure from their level of success on the issues presented to the accounting firm as reflected in the Determination Letter. Plaintiffs have represented that their request does not seek reimbursement of time and expense "unrelated to the enforcement of the Determination Letter, including work performed in connection with Plaintiffs' Answer to Defendant's Counterclaims and discovery." Pls.' Mot. at 8 n.3.

## II. ANALYSIS

### A. Standard of Review

This court has discretion in determining the reasonableness of an award of attorneys' fees. *Mahani v. EDIX Media Corp.*, 935 A.2d 242, 245 (Del. 2007). In reviewing a fee application under Rule 88, the court will "evaluate the reasonableness of fees under the standards of Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct, and normally exclude excessive, redundant,

---

[4] Dkt. 104 ¶ 13.

duplicative, or otherwise unnecessary hours." *Carpenter v. Dinneen*, 2008 WL 2950765, at *1 (Del. Ch. July 3, 2008). In applying that standard, the court considers the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

*Mahani*, 935 A.2d at 246 (quoting Delaware Lawyers' Rules of Professional Conduct 1.5(a)). The party seeking an award of fees and expenses bears the burden of establishing that the amount sought is reasonable. *Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010).

Defendant contends the amounts requested are unreasonable and should be deeply discounted. Defendant insists that Plaintiffs should be awarded no more than $385,690.50—less than half of the requested amount. Opp. at 13–14. Defendant raises four challenges to the fee and expense request. I address each objection in turn.

### 1. Time Incurred in Litigating the Motion to Dismiss Defendant's Counterclaims

Defendant argues Plaintiffs' fee request is excessive because it improperly includes a request for reimbursement of fees and expenses incurred in Plaintiffs' motion to dismiss Defendant's counterclaims, which was not entirely successful. *See* Opp. ¶¶ 9–15. Plaintiffs counter that their ultimate victory in obtaining confirmation of the Determination Letter was inextricably intertwined with their efforts seeking dismissal of Defendant's counterclaims. They further argue that, although they were not initially successful in obtaining confirmation of the Determination Letter in the first round of motion practice, they ultimately prevailed in their renewed motion for summary judgment and, therefore, all of those fees and expenses are compensable, up to 91.3%. I agree.

Defendant mistakenly characterizes the outcome of Plaintiffs' motion to dismiss the counterclaims as "unsuccessful." *See, e.g.*, Opp. ¶¶ 2, 4, 9, 12, 14, 15, 21, 22. The motion was partially successful and partially unsuccessful. Specifically, Plaintiffs obtained dismissal of three out of four counterclaims and a significant portion of the fraud claim. *See Roma Landmark*, 2020 WL 5816759, at *19 (granting Plaintiffs' motion to dismiss claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment in full, and for

fraud, in part). Defendant prevailed on a portion of its fraud claim, which served as the initial basis for the denial of Plaintiffs' motion for summary judgment to confirm the Determination Letter. *Id.* But Plaintiffs later prevailed on their renewed motion for summary judgment, and the time and expense incurred in obtaining that victory is compensable under the Purchase Agreement.

Furthermore, Plaintiffs' time and effort in litigating their motion to dismiss the counterclaims—which included a claim seeking vacatur of the Determination Letter—were intertwined with their affirmative efforts to confirm the Determination Letter. Indeed, Defendant's arguments during earlier motion practice confirm that fact. *See, e.g.*, June 12, 2020 Hrg. Tr. (Dkt. 70) 39:12–16 (Defendant's counsel arguing: "Judge, I think everybody agrees that the fraud claim asserted by the defendant and counterclaim plaintiffs here is inextricably intertwined with the plaintiffs' motion here to confirm their arbitration award"); *id.* at 54 (Defendant's counsel arguing that its grounds to vacate the Determination Letter can be raised in its counterclaims); *id.* at 70:16–20 (Defendant's counsel arguing that it made a timely application to vacate the Determination Letter under the FAA because it sought vacatur in the original counterclaims "and we did plead fraud with specificity, we think, as of that date"); Dkt. 88 at 9 (Defendant's answering brief in opposition to the renewed motion for summary judgment, stating "At the heart of Defendant's

counterclaims, both in the original and amended pleadings, is Defendant's request to vacate the [] Determination Letter based on the bad faith conduct of the Sellers and their principal . . . ."); *id.* ("As relevant to the [summary judgment] motion, Defendant pleaded the facts concerning" its fraud claim); *id.* at 14 ("**DEFENDANT'S COUNTERCLAIMS ASSERT[] THAT THE ARBITRATION AWARD SHOULD BE VACATED DUE TO FRAUD**"); *id.* at 17 ("Defendant properly sought vacatur of the arbitration award by way of a counterclaim"); Dkt. 25 at 28–39 (Defendant's answering brief in opposition to Plaintiff's motion for summary judgment to confirm the Determination Letter asserting Defendant alleged fraud in the amended counterclaims, which "adequately pleaded a basis for vacating" the Determination Letter); *id.* at 38–39 (relying on the allegations in the counterclaims, Defendant argued it "has amply pleaded both fraud as well as 'undue means' justifying vacatur of the [Determination Letter]").

In attempting to seek vacatur of the Determination Letter through the filing of counterclaims, and then amended counterclaims, the Defendant created a litigation dynamic requiring Plaintiffs to seek dismissal of the counterclaims in order to obtain confirmation of the Determination Letter. To be sure, Defendant's grounds for denying Plaintiffs' motion for summary judgment to confirm the Determination Letter were not limited to its counterclaims for fraud. *See* Dkt. 25 ("**THE**

**REMAINDER OF BUYER'S COUNTERCLAIMS DEMONSTRATE THAT SUMMARY JUDGMENT IS NOT APPROPRIATE AT THIS TIME**").

Where, as here, the Defendant's counterclaims were "inextricably intertwined" with Plaintiffs' affirmative efforts to confirm the Determination Letter, "from a practical standpoint, accurately separating work down in pursuit of each claim would be difficult, if not impossible." *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *29 (Del. Ch. Jan. 29, 2010). This objection to the fee and expense application is denied.

### 2.    Redacted Time Entries

Defendant argues that Plaintiffs should not be reimbursed for any fees or expenses in which the relevant billing statements are redacted. Plaintiffs have confirmed, however, that their fee application does not include any of those time entries. Pls.' Reply ¶ 3 ("Plaintiffs have not sought reimbursement for any redacted entries in the invoices attached to the declaration filed with Defendant's Opposition."). Accordingly, this objection is denied.

### 3.    Westlaw Charges

The fee request includes $68,985.39 in computer legal research charges using Westlaw. Defendant contests that amount, and particularly focuses on $20,119.28

in Westlaw charges for the month of February 2020. Opp. ¶¶ 19–22. Defendant asserts that these amounts are excessive and should be disallowed in full. *Id.* ¶ 22.

Defendant argues "[i]t is well known that Westlaw research is available on an unlimited basis for particular databases . . . for a modest fee . . . with additional per-document charges for out-of-plan research items." Opp. ¶ 20. Thus, according to Defendant, the charges incurred here are wholly unwarranted to pass along to Defendant, as it amounts to billing Defendant for what amounts to Gibson Dunn's overhead in maintaining a legal research account with Westlaw." *Id.*

Reasonable Westlaw research charges are a reimbursable expense. *See In re TransPerfect Global, Inc.*, 2021 WL 1711797, at *13 (Del. Ch. Apr. 30, 2021) (finding Westlaw, Lexis/Nexis and other research charges to be reasonable). It is not surprising that 30 percent of Plaintiffs' legal research charges were incurred in one month, when Plaintiffs were preparing their reply brief in support of their motion for summary judgment to confirm the award and their opening brief in support of their motion to dismiss Defendant's amended counterclaims. *See* Dkt. 36 & 41. Furthermore, Defendant's assertion that Plaintiffs' counsel are unreasonably marking up Westlaw charges and billing the Defendant for them is speculative and without merit. The declarations of Plaintiffs' counsel unequivocally state that the expenses reflected in their fee application are expenses that they incurred. *See*

Declaration of Marshall R. King ¶ 7 ("From July 2019 through April 2021, Gibson Dunn incurred expenses in the amount of $69,988.74 in connection with this litigation.") (Dkt. 104); Declaration of Garrett B. Moritz ("From July 2019 through April 2021, Ross Aronstam incurred expenses in the amount of $8,292.23 in connection with this litigation.") (Dkt. 104). Those expenses included the amounts incurred as Westlaw expenses. To "incur" means "[t]o suffer or bring on oneself (a liability or expense)." *Black's Law Dictionary* (11th ed. 2019) (accessed online). The Delaware Supreme Court has construed "incur" in the context of legal fees to mean that the party "must have been liable for a payment at some point." *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 684 (Del. 2013). The Westlaw charges that Plaintiffs' counsel incurred are expenses for which Plaintiffs' counsel were liable. Plaintiffs' counsel, in turn, billed those expenses to their clients, who were ultimately liable for payment. The Plaintiffs, in fact, paid those expenses. *Compare* Opp. Ex. B at pdf 65, 69, 72, 77, 85, 94, 100, 114, 123, 131, 134, 142, 148, 156, 162, *with id.* at pdf 70, 75, 88, 98, 140, 146, 154, 160, 166.[5]

---

[5] Defendant complains that Plaintiffs' counsel's Westlaw invoices were not submitted to the court or produced to Defendant. Opp. ¶ 21. But Defendant does not indicate whether it requested those invoices. Furthermore, Gibson Dunn's invoices to the Plaintiffs, which were produced to Defendant, reflected the monthly Westlaw charges and time entries of

Notably, Defendant's counsel have not submitted any of their Westlaw expenses, indicated whether any of their computer research expenses are billed to their clients, or explained the manner in which those expenses are calculated. In any event, this court has not adopted the view that legal research charges are "overhead" expenses that are not reimbursable in a fee application.[6] This objection is denied.[7]

### 4. The Hourly Rates

---

counsel describing time devoted to legal research. *See, e.g.*, Opp. Ex. B at pdf 66, 68-69, 72–74, 77–79, 85, 87, 94–96, 100–02, 114, 116, 123–24, 131, 134, 142, 145, 148–51, 156–57, 159, 162–63.

[6] *See Lillis v. AT & T Corp.*, 2009 WL 663946, at *7 (Del. Ch. Feb. 25, 2009) (awarding expenses that included reimbursement for Westlaw charges); *TransPerfect*, 2021 WL 1711797, at *31 (awarding expenses including Westlaw charges). *But see BAM Capital, LLC v. Houser Transport, Inc.*, 2020 WL 97459, at *4 (W.D. N.C. Jan. 8, 2020) (finding that "computer research costs are most properly considered to be part of a law firm's overhead costs, which are encompassed in each attorney's hourly billing rate and thus cannot be recovered in addition to the award of attorneys' fees"); *Weinberger v. Great Northern Nekoosa Corp.*, 801 F. Supp. 804, 827 (D. Me. 1992) ("The Court thinks it inappropriate and unreasonable to permit an overhead item of this type to be recovered in addition to recovery for the time of the lawyer who used the research facility." (quoting *Auburn Police Union v. Tierney*, 762 F. Supp. 3, 5 (D. Me. 1991))).

[7] The $20,119 in Westlaw charges incurred in one month is not comparable to the one category of Westlaw charges that the court found to be excessive in *TransPerfect*. Then-Chancellor Bouchard significantly reduced $20,497 in Westlaw charges that appeared to have been incurred for 5.6 hours of research conducted on a single day. *TransPerfect*, 2021 WL 1711797, at *47. The court observed that this was "a significant outlier from other Westlaw charges in the billing records" and may have been "a mistaken entry." *Id.* Thus, he reduced it by 90%. *Id.* Unlike the one-day charge of over $20,000 in *TransPerfect*, the $20,119 in Westlaw charges incurred by Gibson Dunn in February 2020 reflected multiple days of research in connection with the preparation of Plaintiffs' reply brief in support of their motion for summary judgment and opening brief in support of their motion to dismiss Defendant's amended counterclaims. *See* Opp. Ex. B at pdf pages 101–02.

Defendant challenges the hourly rates of one of Plaintiffs' law firms as excessive. Opp. ¶¶ 23–24.[8] Defendant points to a Gibson Dunn partner's hourly rate of $1,645 and gripes that Plaintiffs have not "provided any proof as to what their customary billing rates are for comparable matters" or "evidence as to each attorney's background and years of experience to support the respective claimed rates." *Id.* ¶ 24. As for the latter proposition, it appears that Defendant's counsel has not met the internet or reviewed their own attorney relationships. The attorney profiles of the Gibson Dunn and Ross Aronstam lawyers who litigated this case are available on their firms' respective websites.[9] Even more troubling is the fact that Defendant fails to mention that Mr. King, the lead lawyer for Plaintiffs, was co-counsel with Defendant's counsel in another matter pending before this court at the same time this action was being litigated. *See AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, 2020 WL 7024929 (Del. Ch. Nov. 30, 2020) (listing Mr. King of Gibson Dunn and Mr. Gallagher of Richards Layton & Finger as counsel for Plaintiff and Counterclaim Defendant); *see also In re Revlon, Inc. S'holders Litig.*,

---

[8] Defendant does not challenge Ross Aronstam's billing rates.

[9] *See* www.gibsondunn.com and www.rlf.com.

990 A.2d 940 (Del. Ch. 2010) (listing Messrs. King and Gallagher and their respective firms as representing the same defendants).[10]

As for Gibson Dunn's hourly billing rates, they are in line with those of other experienced litigators appearing in this court, which have been held to be reasonable. *See, e.g.*, *TransPerfect*, 2021 WL 1711797, at *24 (finding partner rates ranging from $1,225 to $1,775 and associate rates of $695 to $1,120 to be reasonable). Gibson Dunn's hourly rates reasonably "reflect the complexity of the work performed and the results obtained" in procuring confirmation of the Award. *Id.* In his declaration, Plaintiffs' counsel attests that "[t]he rates that Gibson Dunn charged Plaintiffs for representation in this matter are the customary billing rates that Gibson Dunn regularly charged its clients for other matters during the relevant time periods." Reply Declaration of Marshall R. King ¶ 4 (Dkt. 109). Notably, Defendant has not supplied the court with its own counsel's rates or amounts charged in this litigation to provide any comparison. This objection is denied.

* * *

---

[10] Another Richards, Layton & Finger lawyer moved Mr. King's admission pro hac vice. *See AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, C.A. No. 2020-0310-JTL, Dkt. 17.

For the foregoing reasons, having considered Plaintiffs' motion for an award

for fees and expenses in light of the relevant factors described herein, I conclude that

Plaintiffs' request is reasonable and should be granted in full. Accordingly,

Plaintiffs' motion for an award of attorneys' fees and expenses in the amount of

$839,255.59 is GRANTED.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor